***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence and amend the Opinion and Award. Upon reconsideration, the Full Commission modifies the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employer-employee relationship existed between plaintiff and defendant-employer between 1971 and 1972.
3. North Carolina Insurance Guaranty Association (for Iowa National Mutual Insurance Company, insolvent) was the workers' compensation carrier for defendant-employer from May 1, 1969, to May 1, 1972.
4. Plaintiff's last full year of work was in 1994, giving him an average weekly wage of $778.63 and a maximum compensation rate of $466.00.
5. It is stipulated that plaintiff was last injuriously exposed to asbestos during his employment with defendant-employer and specifically that plaintiff was exposed to asbestos for more than thirty (30) days within a seven-month period as required by N.C. Gen. Stat. § 97-57.
6. Defendant-employer stipulates that plaintiff has an occupational disease, asbestosis, pursuant to N.C. Gen. Stat. § 97-53(24).
7. The issues to be decided are as follows:
 a) Is plaintiff entitled to compensation under N.C. Gen. Stat. § 97-29 or is he limited to compensation under N.C. Gen. Stat. § 97-31?
 b) Whether plaintiff is disabled as a result of his occupational disease? *Page 3 
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 72 years old and had completed the eighth grade. Plaintiff was employed by defendant-employer in 1971 and 1972, and was thereafter self-employed in the heating and air conditioning business for twenty years, beginning in 1974.
2. Plaintiff's business, Childress Sheet Metal, employed eight to ten workers in addition to plaintiff. In the 1990's, prior to closing the business, plaintiff did job estimates but did not do any physical work such as crawling under houses to evaluate the extent of work to be performed.
3. Plaintiff closed his business in March 1995. According to his testimony at the hearing before the Deputy Commissioner, plaintiff was having significant breathing problems that caused him to have difficulty sleeping. As a consequence, plaintiff testified that he had difficulty talking to customers because he was tired, and that he sometimes had trouble getting to jobsites, which were often dusty and therefore caused him further breathing problems. Plaintiff was 62 years old at the time he closed his business and was able to begin receiving social security benefits.
4. Plaintiff's wife assisted him in running the business and by the time the business closed it was necessary for her to help him with job estimates and other non-physical tasks.
5. At the hearing before the Deputy Commissioner, plaintiff and his wife testified that plaintiff was experiencing breathing problems at the time he closed the business, and that plaintiff had been treated for breathing problems by Drs. Adams and Richardson in the 1990's. *Page 4 
Plaintiff's wife testified that she was unable to obtain any medical records relating to this treatment, and no medical testimony by either of these physicians was offered.
6. Dr. Michael Barnard, an internal specialist, treated plaintiff between 1988 and 1995. During that time period, plaintiff presented to Dr. Barnard approximately seven times, and according to Dr. Barnard's records, plaintiff was seen for a physical exam, bronchitis, sinusitis, some neck pain and abdominal pain. Dr. Barnard thought he recalled plaintiff mentioning breathing problems "a couple of times" but on review of his records could not find any specific recorded mention of breathing difficulty. Dr. Barnard did testify that plaintiff had chronic obstructive pulmonary disease related to smoking.
7. On June 22, 1994, plaintiff presented to Dr. Barnard for an extended physical. Dr. Barnard reported plaintiff's main complaint to be cramps in his foot and the stress he was undergoing in his business. At his deposition, Dr. Barnard testified that there was nothing in his records to indicate plaintiff could not work. Plaintiff did tell Dr. Barnard that he had many spasms. On August 23, 1994, plaintiff again presented to Dr. Barnard for another bout of bronchitis, but did not complain further of breathing problems. Plaintiff's last visit to Dr. Barnard was for an annual physical on September 7, 1995. At this visit, plaintiff complained of abdominal discomfort and had tests for bowel function, a proctoscopy and a barium enema. However, the records did not contain any mention of complaints about shortness of breath.
8. Plaintiff was diagnosed with "an early case of asbestosis" following a January 21, 1997, examination by Dr. Albert Curseen of the Lake Norman Center for Breathing Disorders. Plaintiff did complain of shortness of breath at that examination. *Page 5 
9. In May 1998, plaintiff was diagnosed with squamous cell carcinoma in the right upper lobe, which was subsequently treated surgically on May 11, 1998, with fiberoptic bronchoscopy and a right upper lobectomy with localized lymph node resection.
10. On September 30, 1999, plaintiff presented to Dr. Robert Rostand, an internist and pulmonary specialist, who diagnosed "probable asbestos related disease of the lung and pleura, asbestos associated carcinoma of the lung, atherosclerotic heart disease, and chronic obstructive pulmonary disease due to cigarette smoking." At his deposition, Dr. Rostand testified that plaintiff's difficulty breathing was related to his obstructive lung disease and his asbestos-related disease.
11. Although Dr. Rostand was unable to date the onset of plaintiff's disability, he opined that a component of plaintiff's abnormal pulmonary function had to do with his being a smoker and another part with plaintiff's asbestosis-related disease of the lung. Dr. Rostand further opined that plaintiff's diffusion capacity for carbon monoxide was reduced due to a combination of chronic obstructive pulmonary disease and the thoracic surgery, since there was simply less lung to perform the required functions.
12. Dr. Rostand opined that cigarette smoking does not cause a restrictive process in the lungs but rather airway obstruction. Dr. Rostand concluded that plaintiff's shortness of breath came from the fact that he had had lung surgery as well as the fact that what remained of his lungs was abnormal. Although Dr. Rostand related plaintiff's reduced diffusion capacity to his thoracic surgery, chronic obstructive pulmonary disease and asbestosis-related disease of the lung and pleura, he was unable to identify what percentage was attributable to each. However, he opined that the combination resulted in a restrictive breathing impairment that rendered plaintiff disabled from working. *Page 6 
13. Dr. Steven Dikman, a board certified clinical pathologist, reviewed plaintiff's records and pathology. In a November 15, 1999, report, Dr. Dikman opined that the examination of the lung tissue confirmed the clinical diagnosis of lung carcinoma. The report stated the following:
 The pulmonary interstitial fibrosis noted by chest x-ray was documented by microscopic evaluation and accompanied by a burden of asbestos fibers indicating pulmonary asbestosis. Pleural plaquing was also noted by chest x-ray. The pleural and lung parenchymal findings confirmed that Mr. Childress's occupational asbestos exposure was substantial[,] placing him at a significantly increased risk for the development of lung cancer. It is my opinion, with a reasonable degree of medical certainty, that Mr. Childress has pulmonary asbestosis, chest x-ray findings of asbestos related pleural plaquing and that occupational exposure to asbestos and cigarette smoking were significant contributing factors in the development of his lung cancer.
14. Based on the greater weight of the competent evidence of record, the Full Commission finds that although plaintiff closed his business in March 1995, it was not until May 11, 1998, when plaintiff underwent a right upper lobectomy with localized lymph node resection due to the asbestosis-related lung cancer that his breathing revealed markedly reduced diffusion capacity. Dr. Rostand opined, and the Full Commission finds as fact that plaintiff's shortness of breath came from asbestosis-related disease of the lung and pleura, plaintiff's thoracic surgery related to asbestosis as well as the fact that what remained of his lungs remained in an abnormal condition. In Dr. Rostand's opinion, this combination resulted in a restrictive breathing impairment that rendered plaintiff disabled from working.
15. Mr. Stephen Carpenter, a certified rehabilitation counselor, testified regarding plaintiff's disability. Mr. Carpenter opined that plaintiff was unable to perform any type of work based upon his physical ailments, age, experience and education. Mr. Carpenter further testified *Page 7 
that plaintiff's severe breathing problems would be a significant contributing factor to his loss of wage earning capacity.
16. The Full Commission gives greater weight to the medical opinion of Dr. Rostrand than the opinion of Mr. Carpenter, a rehabilitation counselor regarding plaintiff's ability to return to work. Accordingly, the Full Commission finds that as of the date of his lung surgery, May 11, 1998, plaintiff was unable to return to work.
17. Defendants have not defended this case without reasonable grounds.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was exposed to the hazards of asbestos during his employment with defendant-employer, which subsequently led to plaintiff contracting asbestosis. Plaintiff's asbestosis is an occupational disease due to causes and conditions characteristic of and peculiar to his employment with defendant-employer, and which is not an ordinary disease of life to which the general public is equally exposed. N.C. Gen. Stat. § 97-53(24).
2. Due to plaintiff's occupational disease, he is entitled to temporary total disability compensation at the rate of $466.00 per week beginning May 11, 1998, the date on which plaintiff underwent a right upper lobectomy with localized lymph node resection due to the asbestosis-related lung cancer and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of the plaintiff's occupational disease of asbestosis as may be required to *Page 8 
provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25; 97-59.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee awarded herein, defendants shall pay to plaintiff for his compensable occupational disease of asbetosis temporary total disability compensation in the amount of $466.00 per week beginning May 11, 1998 and continuing until further Order of the Industrial Commission. Such amount as has accrued shall be paid in a lump sum, subject to the attorney's fee awarded below.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable occupational disease of asbestosis, for so long as such evaluations, examinations and treatments may be reasonably required to effect a cure or give relief or will tend to less the period of plaintiff's disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in Paragraph 1 of this Award is hereby approved for plaintiff's counsel and shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Twenty-five percent (25%) of the lump sum amounts due plaintiff shall be deducted from said amount and paid directly to plaintiff's counsel in one lump sum; thereafter, defendants shall pay every fourth check due plaintiff to plaintiff's counsel.
4. Defendants shall pay the cost of this action.
This the __ day of April 2007.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN